IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| LUIS OMAR ALVAREZ, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | CV 122-032 |
| BECHTEL CORPORATION, RICHMOND | * | |
| COUNTY CONSTRUCTION, SOUTHERN | * | |
| NUCLEAR OPERATING COMPANY, and | * | |
| WILLIAMS PLANT SERVICES, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**O R D E R**

Before the Court are motions to dismiss filed by Defendant Bechtel Corporation ("Bechtel") (Doc. 45), Defendant Williams Plant Services ("WPS") (Docs. 47, 61), and Southern Nuclear Operating Company ("SNC") (Doc. 48) (collectively, the "Moving Defendants"). For the following reasons, the motions to dismiss Plaintiff's Amended Complaint filed by Defendants Bechtel, WPS, and SNC (Docs. 45, 47, 48) are **GRANTED** and Defendant WPS's motion to dismiss Plaintiff's Complaint (Doc. 61) is **DENIED AS MOOT**.[1]

---

[1] On March 30, 2022, WPS filed a "Motion to Dismiss *Plaintiff's Amended Complaint* and Brief in Support." (Doc. 47 (emphasis added).) On April 29, 2022, WPS filed a "Motion to Dismiss *Plaintiff's Complaint* and Brief in Support." (Doc. 61 (emphasis added).) However, it appears that WPS may have filed the motion on April 29 in error because the bottom of the motion has a "DRAFTS" notation. Regardless, the Amended Complaint is the operative pleading in this case, and therefore, WPS's motion to dismiss Plaintiff's Complaint (Doc. 61) is **DENIED AS MOOT**.

## I. BACKGROUND

On September 24, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Richmond County Constructors, LLC,[2] ("RCC") discriminated against him on the basis of race and national origin. And that he was subjected to retaliation. (Doc. 47-1, at 2.) Plaintiff only identified RCC as his employer in his EEOC charge. (Id.) He did not name Bechtel, WPS, or SNC. (See id.) On March 3, 2021, the EEOC dismissed Plaintiff's charge against RCC, and informed Plaintiff that he had the right to file suit "against the respondent(s) . . . based on this charge in federal or state court" within 90 days of his receipt of the dismissal.[3] (Doc. 47-2, at 2.)

On March 31, 2021, Plaintiff, proceeding *pro se*, filed this Title VII lawsuit alleging RCC and the Moving Defendants discriminated and retaliated against him based on his race, color, and national origin. (See Doc. 1.) The Moving Defendants moved

---

[2] This Defendant is misidentified as Richmond County Construction. (See Doc. 46, at 1.)

[3] On January 31, 2023, Plaintiff filed a motion "for leave of court to file right(s) to sue letter(s) obtained from EEOC against Defendants[, f]urther Plaintiff demands for expeditious-judicious and prompt resolution of these matters." (Doc. 67, at 1.) None of the Defendants responded to Plaintiff's motion. Plaintiff contends that "on/or around March 1[], 2022[, he] filed with EEOC further charges against Defendants-Bechtel, RCC, [SNC,] and [WPS]" and attaches the right to sue letters for each of those defendants. (Id. at 2, 6-16.) However, these letters are not relevant to this lawsuit because the rule is that a plaintiff "must exhaust administrative remedies *before* filing a complaint." Stamper v. Duval Cty. Sch. Bd., 863 F.3d 1336, 1339 (11th Cir. 2017) (citations omitted) (emphasis added). The letters resulted from EEOC charges that were filed on/or around March 1, 2022, which is after Plaintiff filed this lawsuit. Accordingly, Plaintiff's motion for leave of court (Doc. 67) is **DENIED**.

to dismiss Plaintiff's complaint (Docs. 6, 13, 16), and RCC answered the complaint (Doc. 8). On March 4, 2022, United States Magistrate Judge Christopher L. Ray dismissed these motions to dismiss as moot and directed Plaintiff to file an Amended Complaint. (Doc. 38.) Plaintiff filed his Amended Complaint on March 16, 2022 (Am. Compl., Doc. 39), and Judge Ray transferred the case to the Augusta Division on March 18, 2022 (Doc. 43). RCC filed an answer (Doc. 46), and the Moving Defendants filed the present motions to dismiss (Docs. 45, 47, 48).

In its motion to dismiss, Bechtel argues that Plaintiff's claims fail because Plaintiff failed to exhaust his administrative remedies by timely filing an EEOC charge against it. (Doc. 45, at 2-4.) WPS similarly argues that Plaintiff failed to exhaust his administrative remedies and that Plaintiff does not allege in his Amended Complaint that WPS was his employer. (Doc. 47, at 2.) SNC likewise argues that Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies by not naming SNC in an EEOC charge. (Doc. 48, at 2.) Plaintiff raises nearly identical arguments in opposition to each motion.[4] (See Docs. 55, 56, 57.) WPS and SNC replied. (Docs. 60, 62.)

---

[4] On May 5, 2022, Plaintiff also filed an "Objections/Opposition to Defendants Motion to Di[s]miss Am[]ended Complaint as of Notice Per Curiam Dated 04/26/2022," (Doc. 63) but the arguments raised are nearly identical to those raised in each of Plaintiff's specific oppositions (See Docs. 55, 56, 57). Because Plaintiff does not make clear in his May 5 filing which specific motion he is opposing, the Court construes this filing as a general response against all Moving Defendants' motions to dismiss. Moreover, because the May 5 filing merely repeats the arguments raised in his specific opposition, the Court will refer to the specific oppositions in addressing Plaintiff's arguments and not the May 5 filing.

The motions have been fully briefed and are now ripe for the Court's review.

## II. LEGAL STANDARD

The Moving Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 45, at 1; Doc. 47, at 1; Doc. 48, at 1.)

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" [5] Id. (quoting Twombly,

---

[5] The Court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom in the light most favorable to the plaintiff. Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).

4

550 U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." Id. A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

Further, the Court affords a liberal construction to a document filed *pro se*, and a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

5

## III. DISCUSSION

The Moving Defendants argue that Plaintiff's claims should be dismissed because he failed to exhaust his administrative remedies by not naming them in the EEOC charge. (Doc. 45, at 2; Doc. 47, at 2; Doc. 48, at 2.) "An employee must exhaust administrative remedies before filing a complaint of discrimination under Title VII of the Civil Rights Act . . . ." Stamper, 863 F.3d at 1339 (citing Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001)).

"Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action." Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1358 (11th Cir. 1994) (citation omitted). "This naming requirement serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII." Id. However, this requirement is construed liberally, and "[w]here the purposes of [Title VII] are fulfilled, a party unnamed in the EEOC charge may be subjected to the jurisdiction of federal courts." Id. at 1358-59 (citations omitted). In Virgo, the Eleventh Circuit provided factors the Court should weigh when deciding whether the purposes of Title VII are met:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges;

6

> (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

Id. at 1359. "The burden is on the plaintiff to explain why the individual was not named and to demonstrate that the purposes of Title VII have been satisfied regardless of the omission." Frazier v. Smith, 12 F. Supp. 2d 1362, 1369 (S.D. Ga. 1998) (citing Hulsey v. Gunn, 905 F. Supp. 1067, 1071 (N.D. Ga. 1995)). Here, Plaintiff does not allege that he named any of the Moving Defendants in his EEOC charge, but he argues that the purposes of Title VII have been met and his failure should be excused.[6] (Doc. 56, at 2-4; Doc. 55, at 4-5; Doc. 57, at 3-4.) Therefore, the Court turns to Plaintiff's Amended Complaint, taking all factual allegations as true, to determine whether Plaintiff has carried his burden to demonstrate that the purposes of Title VII are satisfied for each Moving Defendant.

As an initial matter, Plaintiff's Amended Complaint includes both allegations that are specific to a Defendant and allegations raised generally against all Defendants. The Court will address the allegations related to each Moving Defendant under the relevant

---

[6] The Court may consider the EEOC charge without converting the motions to dismiss into motions for summary judgment because: (1) the charge is expressly referenced in the Amended Complaint (Am. Compl., at 4); (2) the charge is central to Plaintiff's claims; and (3) the authenticity of the charge is not disputed. See Gresham v. DaVita Healthcare Partners, Inc., No. CV 118-222, 2020 WL 1492173, at *3 (S.D. Ga. Mar. 23, 2020) (quoting Chesnut v. Ethan Allen Retail, Inc., 971 F. Supp. 2d 1223, 1228-29 (N.D. Ga. 2013)) ("In discrimination cases, the EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it was not attached to a pleading.").

section, but to avoid repeatedly listing the general allegations against all Defendants, the Court identifies that Plaintiff alleges the following against all Defendants:

> On or Around August 2017[,] Defendant ("SNC") and it[]s Owner Georgia Power, selected and hired ("Bechtel") to build the nuclear energy facilities, Units 3&4, at Plant Vogtle. Through this contract ("Bechtel") is responsible for completing construction and/or take over the day-to-day construction of Vogtle Units 3 and 4 under the management and direction of Southern Nuclear. ("SNC")
>
> On October 27th, 2017, @9:22 AM Eastern Daylight Time- Global Power Equipment Group announced that its wholly owned subsidiary, Williams Industrial Services Group, LLC through its subsidiary Williams Plant Services, LLC ("Williams") has formed a Joint Venture with ("Bechtel") to establish Richmond County Constructors LLC ("RCC"). ("RCC") to operate as a construction subcontractor to ("Bechtel") who has been selected as the prime construction contractor for Plant Vogtle. ("Williams") is a 25% member in the Joint Venture.
>
> Under this business structure, Defendants share accounting, human-resources, training, payroll, and management services together with hiring and firing decisions related to personnel such as:
> a.) Apprentices, Craftsmen, Foremen/women and/or General Foremen/women = ("RCC")
> b.) Superintendents and Engineers = ("Bechtel")
> c.) Payroll ("[WPS]")
> d.) Coordinators, Directors and/or General Managers = ("SNC"). In fact, making a mixture of Composite crews, confusing at times. Defendants share control of Personnel, funds, and Labor Relations for the development of one main goal in mind; Build the nuclear energy facilities, units 3&4 @Plant Vogtle. With interrelation of operations. Centralized control of labor relations. Common management and ownership, with many overlapping operations that Defendants could be consider[ed] a "single employer". Making each Defendant in fact a: "Joint Employer".

(Am. Compl., at 3 (emphasis omitted).) Additionally, Plaintiff names six (6) individuals as allegedly being "violating agents for defendant(s) actors/actresses presumably working for ("RCC") but none of them sporting an ("RCC") email address account." (Id. at 5 (emphasis omitted).) Moreover, Plaintiff states that "[t]he earliest that Plaintiff came to know of a Joint Venture was at the time of ('RCC') filing a response to EEOC."[7] (Id. at 4.)

For the following reasons, taking the general allegations listed above and the specific allegations identified for each Moving Defendant below, Plaintiff has failed to carry his burden of showing that the purposes of Title VII are met, such that his failure to name the Moving Defendants in his EEOC charge is excused.

1. Bechtel

In addition to the general allegations discussed above, Plaintiff alleges that he saw some supervisors wearing white hardhats with "Bechtel" on it. (Id. at 7.) Taking all of Plaintiff's factual allegations as true, permitting Plaintiff to sue Bechtel despite his failure to name it in his EEOC charge would

---

[7] In addition to these allegations, the Amended Complaint includes general conclusory allegations concerning the Moving Defendants. (See e.g., Am. Compl., at 4, 5, 13.) As the March 4, 2022 Order stated, the Court cannot consider Plaintiff's conclusory allegations when determining whether he has met his pleading burden. (Doc. 38, at 10 n.4.) Accordingly, the Court does not consider Plaintiff's general unsupported allegations related to the Moving Defendants.

9

not be consistent with the purposes of Title VII. The Court will address each Virgo factor as it relates to Bechtel below.

First, for the similarity of interest factor, Bechtel argues that the Magistrate Judge in the Court's March 4, 2022 Order found that the "joint venture" allegation alone was insufficient to excuse Plaintiff's failure to name. (Doc. 45, at 6 (quoting Doc. 38, at 13-14).) However, the Court's finding was that the "joint venture" allegation alone was insufficient "to infer that Plaintiff's failure to name these two defendants in his EEOC charge is excusable," (Doc 38, at 13) — not that the "joint venture" allegation was insufficient to demonstrate a similarity of interest. Turning to Plaintiff's Amended Complaint, he alleges that RCC operated as Bechtel's subcontractor and that "Superintendents and Engineers = ('Bechtel')" under the "joint venture." (Am. Compl., at 3.) The Court construes this allegation to mean that the superintendents and engineers were employed by Bechtel. Therefore, the Court finds there was a similarity of interest between Bechtel and RCC because the positions affiliated with Bechtel, if true, would be working with RCC on the construction of Vogtle Units 3 and 4. As for the second factor, Bechtel argues that Plaintiff could have easily ascertained Bechtel's identity based on RCC's response to the EEOC charge that "disclosed the existence of the [joint venture] and clearly identified Bechtel as one of its participants." (Doc. 45, at 8-

9.)  The fact that Plaintiff may have known Bechtel's identify after the charge was filed is immaterial to determine whether Plaintiff knew or could have known the identity of the unnamed party "*at the time* the EEOC charge *was filed*." Virgo, 30 F.3d at 1359 (emphasis added).  Nevertheless, Plaintiff knew or could have known of Bechtel's identity because he alleges that he saw some supervisors wearing white hardhats with "Bechtel" on while on the job and refers to employees with Bechtel email addresses in his Amended Complaint.  (Am. Compl., at 3, 5.)  As for the third and fourth factors, Plaintiff argues in his response that Defendants were "joint employers."[8] (Doc. 57, at 3.)  However, the "joint employer" allegation alone is conclusory, and therefore, does not allow for the Court to infer Bechtel had notice of the EEOC charge.  Moreover, Plaintiff seems to use "joint venture" and "joint employer" interchangeably, but these are two different ideas.  See Koger v. Texaco, Inc., No. 4:04CV205, 2007 WL 951752, at *7 (N.D. Ga. Mar. 28, 2007) ("[Defendants] purported status as joint ventures does not determine whether [an entity] is an employer, for Title VII purposes.")  Plaintiff also argues "Defendants knew of Plaintiff's filings with EEOC and cho[]se to do nothing as it

---

[8] Plaintiff seems to suggest that he needs discovery to determine whether the Moving Defendants received adequate notice such that they should remain in the case under his "joint venture" or "joint employer" theory. (See e.g., Doc. 55, at 2; Doc. 56, at 3; Doc. 57, at 3; Doc. 63, at 2-4.)  However, given that Judge Ray provided Plaintiff an opportunity to amend his complaint, the Court **DENIES** Plaintiff's request to engage in discovery as it relates to the Moving Defendants.  Iqbal, 556 U.S. at 678-79 ("[Rule 8] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.")

did not bring them any inconvenience nor stop them from participating if they would have chosen to do so." (Doc. 57, at 2.) However, Plaintiff fails to cite to any allegations in his Amended Complaint to support this argument, and thus, the Court cannot find that Bechtel received adequate notice and had an adequate opportunity to participate in the reconciliation process. Finally, for the fifth factor, Bechtel does not argue it suffered prejudice.

Because several Virgo factors weigh against Plaintiff, Plaintiff has not alleged sufficient facts to support a reasonable inference that the purposes of Title VII are met. Therefore, his failure to name Bechtel is not excused. Accordingly, Bechtel's motion to dismiss (Doc. 45) is **GRANTED** and Plaintiff's claims against Bechtel are **DISMISSED** for failing to file an EEOC charge against Bechtel.

2. WPS

As with Plaintiff's against Bechtel, permitting him to sue WPS despite his failure to name it in his EEOC charge would not be consistent with the purposes of Title VII. The Court will address each Virgo factor as it relates to WPS below.

First, for the similarity of interest factor, WPS raises the same argument as Bechtel by relying on the Court's March 4, 2022 Order. (Doc. 62, at 2-4.) However, as discussed above, that Order did not find the "joint venture" allegation was insufficient to

find a similarity of interest, but instead that the "joint venture" allegation alone was insufficient "to infer that Plaintiff's failure to name these two defendants in his EEOC charge is excusable." (Doc 38, at 13.)  In his Amended Complaint, Plaintiff also alleges WPS provided payroll services at Plant Vogtle and is a 25% member in the Joint Venture.  (Am. Compl., at 3.)  With these additional facts, it is sufficient to find there is a similarity of interest between WPS and RCC because WPS had an ownership interest in RCC.  As for the second factor, WPS argues that Plaintiff could have ascertained WPS's identity after RCC filed its response to Plaintiff's EEOC charge.  (Doc. 47, at 9.)  For the same reasons as Bechtel, this argument is meritless.  However, Plaintiff knew or could have known of WPS's identity because Plaintiff refers to employees with WPS email addresses in his Amended Complaint.  (Am. Compl., at 5.)  Moreover, Plaintiff argues in his response that he saw some supervisors wearing white hardhats with "WPS" on the job.  (Doc. 55, at 4.)  Regarding the third and fourth factors, Plaintiff raises the same arguments it did for Bechtel, and therefore, the Court cannot infer that WPS received adequate notice and had an adequate opportunity to participate in the reconciliation process.  Finally, for the fifth factor, WPS does not argue it suffered prejudice.

Because several <u>Virgo</u> factors weigh against Plaintiff, Plaintiff has not alleged sufficient facts to support a reasonable

13

inference that the purposes of Title VII are met. Therefore, his failure to name WPS is not excused. Accordingly, WPS's motion to dismiss (Doc. 47) is **GRANTED** and Plaintiff's claims against WPS are **DISMISSED** for failing to file an EEOC charge against WPS.[9]

### 3. SNC

In addition to the general allegations discussed above, Plaintiff alleges that after he was verbally discriminated against, "the ladies driving the van" recommend that Plaintiff "go to [SNC's Employee Concern Program ("ECP") and] ECP took some notes and [began] an investigation" into the allegedly discriminatory conduct. (Am. Compl., at 14.)

As with his claims against Bechtel and WPS, permitting Plaintiff to sue SNC despite his failure to name it in his EEOC charge would not be consistent with the purposes of Title VII. The Court will address each Virgo factor as it relates to SNC below.

First, for the similarity of interest factor, Plaintiff does not allege that SNC plays any role in the "joint venture" but alleges that "Coordinators, Directors and/or General Managers = ('SNC')" under the "joint venture." (Id. at 3.) The Court construes this allegation to mean that the coordinators, directors, and/or general managers were employed by SNC. This

---

[9] Because the Court finds Plaintiff's claims fail for failure to name WPS in his EEOC charge, the Court does not address WPS's employer arguments at this time. (Doc. 47, at 10-11.)

14

allegation combined with the allegation that he reported his grievances to SNC's ECP could suggest a similarity of interest. But SNC argues that if the Court finds a similarity of interest because "Plaintiff interacted with [SNC's] ECP . . . [that] would mean that every nuclear licensee would be automatically and unfairly judged as commingled with its contractors and vendors . . . for simply attempting to comply with its [Nuclear Regulatory Commission] obligations." (Doc. 48, at 7.) Therefore, the Court cannot find that Plaintiff's interaction with SNC's ECP alone shows a similarity of interests and because Plaintiff states that "[his] affairs with ECP [] were inconsequential in nature." (Doc. 56, at 2.) However, based on Plaintiff's allegation that coordinators, directors, and/or managers affiliated with SNC would be working with RCC on the construction of Vogtle Units 3 and 4, the Court finds there was a similarity of interest between SNC and RCC. As for the second factor, SNC argues that Plaintiff knew of SNC because of his interactions with SNC's ECP. (Doc. 48, at 7-8.) Moreover, Plaintiff also states in his response that he saw some supervisors wearing white hardhats with SNC's logo while on the job. (Doc. 56, at 3.) Thus, like the previous two Defendants, Plaintiff knew or could have known of SNC's identity. As for the third and fourth factors, Plaintiff raises the same arguments it did for Bechtel and WPS, and therefore, the Court cannot infer that SNC received adequate notice and had an adequate opportunity

15

to participate in the reconciliation process. Lastly, for the fifth factor, SNC argues that prejudice is presumed where "none of the <u>Virgo</u> factors favor Plaintiff's position." (Doc. 60, at 6.) The Court agrees. <u>See</u> <u>Alvarez v. Iron Workers Union Loc. 709</u>, No. CV422-087, 2023 WL 174993, at *5 (S.D. Ga. Jan. 12, 2023) (citations omitted) ("In view of the fact that [a Defendant] was not a participant in the [EEOC] process, it is only reasonable to assume that it was prejudiced by the exclusion as it was precluded from advancing any defenses[.]").

Because several <u>Virgo</u> factors weigh against Plaintiff, Plaintiff has not alleged sufficient facts to support a reasonable inference that the purposes of Title VII are met. Therefore, his failure to name SNC is not excused. Accordingly, SNC's motion to dismiss (Doc. 48) is **GRANTED** and Plaintiff's claims against SNC are **DISMISSED** for failing to file an EEOC charge against SNC.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Moving Defendants' motions to dismiss (Docs. 45, 47, 48) are **GRANTED** and Defendant WPS's second motion to dismiss (Doc. 61) is **DENIED AS MOOT**. Moreover, Plaintiff's motion for leave (Doc. 67) is **DENIED**. The Clerk is **DIRECTED** to **TERMINATE** Defendants Bechtel, WPS, and SNC and all other motions, if any, pertaining to them.

**ORDER ENTERED** at Augusta, Georgia, this 20th day of March, 2023.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA